We're back on track. So we call the matter of the United States of America, Exeral Paul Dennis v. Medco Express Scripts. Mr. Stone? Yes, Your Honor. Good morning, Your Honor. David Stone, appearing for the plaintiff appellant, Paul Dennis. Respectfully requesting four minutes rebuttal. Brandon? May it please the Court, I'd just like to make a very short sort of summary of what we believe the issue is here for the Court, and then I'd be happy to answer any questions the Court may have. We believe that because of a misapplication of this Court's Schumann decision, Paul Dennis, a prototypical relater with direct insider knowledge of a fraud, was denied original status. This case involves a continuing multi-million dollar fraud whereby Medco induced AstraZeneca to convert rebates on its blockbuster drug Nexium that were intended for Medco customers, including the United States. We've read the brief. We do know the factual background, and although factual background in quotes, because what we have before us is really a Fourth Amendment amended complaint, correct? Correct. By way of a motion to dismiss. Correct. So let's talk about the original source exception first, and I understand your attempts to distinguish your case from Schumann. What I'd like to ask then is, putting aside the allegations that involve Merck, why does Schumann, why does the Schumann ruling not prevent your client from qualifying as an original source? What is there there that makes an original source, putting aside that allegation? Let me explain. First of all, for context, this court in Schumann found that merely experience-based belief, or essentially educated guesses, based upon conversations with others or review of documents, in that case, about a company that the relater did not work for, two companies that the relater did not work for, was insufficient to constitute direct evidence, and they pointed out... Well, the specific language of Schumann is, knowledge of a scheme is not direct when it is gained by reviewing files and discussing documents therein with individuals who actually participated in the memorialized events. That's correct, Your Honor. That is some of the language in Schumann, but I would argue that it has to be read in the context of what the alleged that he gained direct knowledge about Medco's fraudulent scheme from discussing it with Medco executives, from supervising a Medco employee, also by the name of Dennis with two Ns, I believe, who had told him that Medco said to supply auditors with only documents related to from reviewing purchase discount and rebate agreements between Medco and AstraZeneca. No, I do not believe that is a correct and accurate representation of the allegations. The allegations are that Mr. Dennis, as a senior executive, one of only five people who knew about the essential elements of this fraud, in his capacity as a member of the contracting department, was advised that they intended to institute a scheme to boost profits on rebates after the meeting. And there's no dispute that he wasn't in that meeting. Let me try it this way. Sure. In the Fourth Amendment complaint, why don't you specifically identify where you've pled direct knowledge? Yes, I will, Your Honor. Here's a paragraph, though. If you look at paragraphs, first of all, if you look at paragraphs 120, 123, 129, 132. Yeah, let's take them a couple at a time. That's fine. 120 is where you started? Yep. That's where we later heard one of Medco senior executives specifically complained that rebates were not generating enough revenue. Right. So he had non-public direct knowledge as an employee at Medco who was a member of this department that Medco was looking to increase their profits due to their rebates. That's direct knowledge. That's direct knowledge as an employee of the company that's committing the fraud. In Schumann, he was not an employee of the company that was committing the fraud. And that's a critical distinction. Why is it a critical distinction? Where is there anywhere in the text of the statute that says there's a difference legally in being an insider versus an outsider? Your Honor, I would agree with that. The point is... Where is there in any of our jurisprudence in these cases any import in drawing a distinction between an insider and an outsider? Well, there are many cases that suggest that an insider is the prototypical relater because he's going to have knowledge of the intent of the actual internal workings of the company as opposed to somebody who's speculating about what that company is doing. And I would just point out in Schumann, I would point your Honor to the quotes on 847 and 848 where they say that Schumann doesn't have any direct or independent knowledge of how BMS sets his best price. What page are you reading from? I'm sorry, page 847 of the Schumann decision. Let's see how much quicker you get to it. This court, it says, this court found there's no proof to indicate Schumann has direct and independent knowledge of BMS's actual best price for Coumadin, how it was calculated, the inaccurate best price BMS reported to the government, or how it was calculated, or any improper payments made to Medco or its health plans. That was about BMS. About AstraZeneca, they said Schumann's knowledge that AZ was aware of its best price obligations did not indicate that AZ intended to evade such obligations. So, and then I would add later on on that page 847, the court stated Schumann is substituting experience-based belief that misconduct was occurring for the requisite direct and independent knowledge that is plainly insufficient to qualify as an original source. So again, show me where you've plugged that. You're talking about 121, 123, 129. All right, all right, all right, all right. I'll do that, Your Honor. So going back to those paragraphs, sorry. Here is the page number also. Sorry, I was, now I got to find my page. I apologize. I'll tell you, 123 is in appendix 1215, if that helps. Right, 123. So 123 says that while working as a senior executive at Medco, he learned that Medco intended to approach AstraZeneca to increase their rebates in order to obtain formulary exclusivity. He learned that from the people in his department that he worked with in his capacity as an employee of Medco. He then learned after that meeting, as in his capacity as an employee of the contracting department of Medco, when it was distributed to him, the agreements that were the evidence of that fraud. He was asked to implement those by overseeing the person, Regina Dennis, who was going to ensure that purchase discounts were kept separate from rebates and that those agreements were not going to be showed to customers. So that's direct knowledge is our position. Because yes, he was not in the room. But in his capacity as a senior executive of the company committing the fraud, he was asked to oversee the implementation of it. And it was explained to him. And as your honor told me to leave out Merck, but I think Merck is critical because the architect of the fraud, Art Narden, who is the head of contracting at Medco, sat down and explained the fraud in detail to this relator so that he could prepare a PowerPoint. You would agree, wouldn't you, that the mechanism of the two frauds, AstraZeneca and Merck, is really the same? Yes. Yeah. They were attempting to extend the fraud to Merck. So you're relying upon the sequence and not some difference in mechanism. Am I correct? No. Not at all. Not at all. No, you're not. No, he's not correct. And no, you're not relying on that. I am not relying on some difference in mechanism. It was an attempt to extend the very same fraud shortly thereafter the agreements were entered into with AstraZeneca to Merck. So help me understand whether or not we're talking about the test under the pre-2010 or the post-2010 definition. Judge, I believe that the majority of these allegations would be under the pre-2010. In fact, did you waive any argument that your allegations after the 2010 amendment could qualify you as an original suspect? I don't believe we waived that argument. Where does it appear in your opening brief? I think you said that it appears in your opening brief at page 24 to 47. And I scanned those the other day, and I couldn't find anything that explicitly said that. Your Honor, I apologize that I can't point you to that right now. All I can say is that in our complaint, we have allegations that this conduct continued through 2014, that these agreements were renewed in 2007. Yeah, but what's the complaint that you can help us as a matter of law determining whether or not we apply the pre-2010 or the post-2010 definition to original source? That's what you pledged, what you pledged. It doesn't go to as a matter of law for the test that we apply. I'm sorry. I'm not sure I understand the question. Well, it could be that what started before 2010 continues on as a single fraud. And because the conduct continued past 2010, the amendments in 2010, redefining the definition of original source, that's the test we apply. Or it may be that we look to the time the fraud began to apply the law at that point, and the Supreme Court seemed to suggest that in Hughes because of the problem of applying a subsequent change in the law to earlier conduct. Your Honor, what I would say, and I don't think I dispute this, that the conduct which occurred before 2010, the law before 2010 applies. I mean, I don't know, I have seen no case that says, you know, you can have an argument that somehow you go backwards. I haven't seen no case that says specifically you can't go backwards, but I don't have a case to cite that says you can. All right. But we do have allegations. Excuse me. Setting that question aside as to whether or not there are any cases that make a differentiation, the change that was, that resulted from the 2010 amendment, is that the disclosure materially add to what has been publicly disclosed, right? Correct. All right. So do any of your post-amendment allegations here materially add to the public disclosures regarding Medco's scheme? If so, how? Yes, they do, Your Honor. I'll give you some examples. He specifically states that this purchase agreement was kept secret, that it was not disclosed. He specifically alleges that the CIA that Medco entered into contained an exclusion for the specific intent of allowing them to conceal this fraud and allow this fraud to be committed from the U.S. government, because if it hadn't had that exclusion, they would have had to report those discounts and they couldn't have concealed this. He specifically says that even though the agreements say in them that there's going to be some segregation of discounts with respect to certain programs, that Medco never had a system by which it could have segregated those programs. He specifically says, he names the architect of the fraud, the motive for the fraud, and the manner in which the fraud was implemented. None of that was in the public domain. At best, the only two things that were in the public domain were that Medco tries to steal rebates in various ways. And I was the counsel in the Hunt litigation, so I know about that. But that does not mean that if they engage in a completely different scheme, that that's somehow publicly disclosed. The other allegations are just general allegations about purchase discounts that do not go to the specific allegations of fraud in this case. And I would argue under Silver, they aren't even public disclosures because you could not use those allegations to allege the fraud that the relator has alleged in this case. All right, Mr. Stern. Thank you. We'll have you back on the board. Thank you, Your Honor. Mr. Singer. Thank you. May it please the Court. There's only one issue in this appeal, and that is whether Mr. Dennis met his burden to show that he was an original source of his publicly disclosed allegations. We're not talking about burdens here, are we, given that we're reviewing a complaint on an appeal from a dismissal? Well, there actually is a burden here because this is a jurisdictional issue. Well, it is as to any pre-2010 conduct. Correct. It's a 12B6 review otherwise. You're exactly right, Your Honor. But there is no more appeal as to the 12B6 aspect. But the only issue in this appeal is based on the 2010, the pre-2010 statute. That's the only claim. Mr. Stone just said otherwise in response to my last question. And Mr. Stone is, with all due respect to him, mistaken because Mr. Stone did list as an issue on appeal the question of whether the district court correctly applied the post-2010 statute to his post-2010 allegations. He did not then argue it in his brief. We pointed that out in our rappellee brief that he had therefore waived the issue. His reply brief is silent on the issue. The question is waived. Well, and even if his reply brief were not silent under the jurisprudence of this court that applies to waiver, we still might regard the issue as waived. I think you should indeed regard the issue as waived. But the point is even clearer when he did not even respond to our notation that the point was waived. He has accepted the waiver. I will point out just, although it's certainly not the principal point I want to discuss today, that the district court was entirely right about the post-2010 allegations. That Mr. Dennis left Medco in 2008. He has no information about what occurred that's not public. He monitored events, as I understand it. That, I agree. I'm not sure what that term means. And maybe in rebuttal, Mr. Stone can enlighten us. It is not, as I recall, fleshed out anywhere in the complaint as to what monitoring activity consists of. No, I agree. I think what the complaint actually says is that he reviewed public filings. And that's how public information about the company. And that's how he monitored events after he left the company. And so there is nothing after 2008, and certainly nothing after March 2010, that Mr. Dennis could possibly have materially added. And the only thing he even says specifically in his complaint, as the district court found, that occurred after 2010, is that the agreement between Medco and AstraZeneca was renewed and remained in place. And that is certainly not material information about what has long been alleged as a long-running fraud, or alleged fraud. It's simply not a material addition, and it's not something he has inside information about anyway. What would have satisfied the pleading requirements, assuming we're operating under pre-2010 amendments? Give me some examples of what would satisfy the pleading requirements. Sure. I mean, if he were actually, so the standard under pre-2010 is direct and independent knowledge of the allegations. So what this court has said on multiple occasions, and most clearly in Schuman, is that you have to have direct means immediate, without any intervening instrumentality. So if he was in the room and he's told, we're participating in a fraud, wink and a nod, that's not enough? Well, if he's there when the fraud is actually occurring, that's enough. If somebody later tells him, we've participated in a fraud, that's not what he alleges, by the way. But if somebody had later told him that, that's certainly evidence of a fraud, but it is not direct information of a fraud. And that's what the court held in Schuman. There has to be an eyewitness to the fraud. You have to be, if it's a fraud that occurs in a room, then yes, you have to be, as the recent quote says, in the room where it happens. What about a paper fraud? Then you have to be part of the transmission of the paper as it happens. So that's the difference. You'd have to knowingly, I assume, be a part of the transmission. You'd have to know that what you're transmitting contains the wording that's fraudulent. So you're basically a co-conspirator, aren't you? Well, you don't have to be in on the fraud. I think what this court has said. But you can be. You certainly can be, absolutely. Why wouldn't that be excluded under the effect of the statute? Why wouldn't that? Specifically be excluded under the text of the statute. So I think you may be asking about whether the relator can get a share of the recovery. So if you are, if the court later finds. That's a downstream determination that's made by the court. You're correct. And it's discretionary. The court may exclude the relator from a share of recovery, may reduce the share. Not required to. So the way that. Akin to an unclean hands doctrine. Very much so. It's a discretionary inquiry by the district court. And so what you have to be is an eyewitness to the events. You have to actually have firsthand knowledge of the events. But don't we have case law in this circuit that even suggests more than that? I'm interested in hearing you with respect to our Atkinson opinion. What does it say? What does it require of the relator? And the follow up question is, as things stand, is it reconcilable? So I'm not sure I'm not sure I would agree that there's any irreconcilability with Atkinson. I think that Atkinson is primarily a case about when the relator is relying on both public information and non-public information. It also talks about significant investigative input, which suggests a more active role, doesn't it? There are cases, and Atkinson is on this point. I'm not sure it actually holds this much. But there are cases in other circuits that have held that when you conduct an investigation of a fraud and you root out a fraud through your own efforts, you can then become an original source. And you could do that even if you're not an insider at the company. If you actually, through the fruits of your own labors, you uncover a fraud, then you can conceivably have firsthand information that way. I'm not aware that that has occurred in this court. And I think it's quite a rare circumstance. But that's not what Dennis is alleging. He's alleging that in the course of his employment, he came across information about a fraud. And that he then concluded, because he knew how the company's systems worked and because he spoke to other people who were involved, that it was fraudulent. And that's exactly what Mr. Schuman alleged. And ironically enough, Mr. Schuman was a co-worker with Mr. Dennis at Medco. He spoke to the same people. Mr. Narden was mentioned, the alleged perpetrator of the fraud that Mr. Dennis alleges he talked to. Mr. Schuman also talked to. That's good, because it's the same fraud. It is the same fraud, Your Honor. That's correct, because it was publicly disclosed. And that's another issue that Mr. Stone seems to continue to be disputing. But he specifically and affirmatively waived that issue in his appeal. This is a publicly disclosed fraud. And we're talking, by the way, about an original source test that is a narrow exception to the rule that somebody is not allowed to sue on a publicly disclosed fraud. The government can. But if you're not the government, if you're going to get a share of recovery, and it's a fraud that's already been publicly disclosed before you sue, you need to meet this narrow original source test. And prior to 2010, this court and more described that as a formidable hurdle. And Congress wanted it to be a formidable hurdle. That's how they wrote it, direct and independent knowledge. Because you're suing for something that's already in the public domain. Government already has the information. Well, but yes, that's true at least pre-2010. Correct. But post-2010, the Congress chose to eliminate the direct knowledge. They did, Your Honor. And the Moore case describes that as a radical change. And so that's why it's so important that we're talking about the pre-2010, because the standard is directness. The standard does not. So you maintain that it is a radical change. And therefore, Congress' decision to so amend the statute should not provide us any kind of a window into what it intended with respect to the original statute. And just how much ought to be required to show direct knowledge. Well, the original statute was passed in 1986. And so what Congress did in 2010, I don't think bears on what Congress intended in 1986. And in 2010, there is no significant legislative history about what Congress was intended. All we have is the language. But what this court found in the Moore case is that it was a radical change, that the prior standard of direct knowledge was a formidable hurdle, and that the test that the Congress has always been grappling with is to try to draw a middle ground between avoiding parasitic lawsuits, avoiding relators coming in and suing on publicly disclosed information, but also rewarding relators who really have something of importance, who really deserve to be rewarded. And prior to 2010, the Congress drew that line at direct and independent knowledge. Today, they draw it in a different place. It's a different standard. It's not necessarily lesser or greater, but it's different. What is your response to the relator's argument concerning his participation in and knowledge of the Merck negotiations and that activity? You heard that, I think, toward the end of Mr. Stone's argument. And the district court also considered that. And I think the district court was quite correct in saying that, yes, perhaps he had direct and independent knowledge of the Merck negotiations, but Merck did not agree to do anything. Merck and Medco did not agree to do anything fraudulent. This is a False Claims Act case. And this court has repeatedly said that it's a claim-by-claim analysis. Each claim is a separate potential offense. And you have to look at what the actual claims are that are being submitted to the government that are false. No false claims arise from the Merck relationship, because there was no relationship with Merck that's alleged to have been fraudulent. He has no direct and independent knowledge, Mr. Dennis doesn't, of the Medco-AstraZeneca relationship that he claims did result in false claims. And this court, in the Judd case, I think it's a non-precedential opinion, but it came to a very similar conclusion in saying that the relator in that case may have had direct and independent knowledge of a fraud as to one party, one participant, but not as to the other health care providers that the relator was alleging were also involved in fraud. Dennis has also alleged that he provided backup documentation to auditors, I believe, that related to only rebates and not purchase discounts. Is that how you recall the allegation? The allegation is that he did that prior to 2005. Why doesn't that give him direct knowledge? Because that's not the fraud. The fraud that he's alleging happened as a result of contracts between Medco and AstraZeneca starting in 2005, where there were allegedly these hidden rebates. He's saying that he did something similar prior to that regarding other parties, and that this was a general process that Medco followed. And then it's the same thing after you mentioned the conversation with Regina Dennis. He says he had that conversation in the 2006 time frame. And that conversation was about her allegedly doing the same thing later, that the relator had done earlier. And he divined from that that she was therefore engaged in fraud involving AstraZeneca, because she told him that she was following the same process that he followed. And by the way, there's no allegation in the complaint that I see that relator was tasked with implementing the fraud or overseeing the fraud in some way. That's not alleged. But even if it were, his only information that he's alleging that he got was secondhand from Ms. Dennis and things that he surmised from the work that he did before the AstraZeneca relationship, before he changed jobs into his senior executive position, which by the way, the exact same senior executive position that Mr. Schuman had. They had the same title, vice president of pharmaceutical contracting. And if anything, by the way, Mr. Schuman's allegations were a closer call, because Mr. Schuman not only spoke with participants in the fraud, both from the Medco and the AstraZeneca side, and he not only reviewed the supposed smoking gun documents and contracts, including supposedly confidential contracts like Mr. Dennis alleges, he also negotiated extensions to those fraudulent agreements, which Mr. Dennis doesn't allege that he did. Mr. Schuman, unlike Mr. Dennis, submitted a 35-page affidavit to substantiate his original source allegations. Remember, this is a jurisdictional inquiry, so the court can consider any evidence in front of it and Mr. Dennis presented a lengthy affidavit where he details all of the efforts he went into to extend the agreements, to try to extend it to other health care providers. That was not sufficient, because all of his information was secondhand. He was not in the room when it happened. He just heard about it afterwards. He worked on trying to extend it. And contrary to Relator's argument today, Schuman did not fail the original source test because he was employed by Medco as opposed to AstraZeneca. He failed because he didn't witness the events. It didn't matter whether he was employed by Medco or AstraZeneca. He could have been employed by Medco in that case and actually witnessed the negotiations over the fraud, in which case he would have been an original source, but he didn't. So let me turn to a couple of the specific allegations in the 30 seconds or so I have left. He claims that he alleges in various ways that he knew things about the way that Medco did business. And I think that that took up a fair amount of my adversary's time this morning, that he supposedly supervised things, he understood things within Medco. But that's exactly what Schuman said as well. It's categorically insufficient under Schuman. You cannot claim original source status from an experience-based deduction that fraud is happening. You have to witness it firsthand. And more than surmise. No matter how well informed the surmise is, it has to be more than surmise. You can be right. The surmise could be correct. But if it's not firsthand, if it's not based on, you're actually witnessing the events firsthand, then it's not direct under the pre-2010 statute. Thank you very much, Mr. Singer. And Mr. Stone, we'll have you back on rebuttal. Thank you, Judge. First of all, the court did not decide the public disclosure issue. So we did not waive the public disclosure issue. It wasn't decided below because it decided this issue on original source. Say that again. I'm not sure I know what you mean. The court did not reach the public disclosure issue. It said that it was not going to reach that issue because it decided the case on original source. So we couldn't have appealed it. The court didn't decide it. But the test that we have to apply to your allegation, that is what is before us. No, I am arguing that the public disclosure, he is not barred by public disclosure. I'm just simply saying that the court, I'm sorry, the court did not, I'm sorry, the court did not decide the first to file issue. He was talking about the first to file issue before, and you were talking about that. Court did not decide that. It's not before the court. We couldn't have appealed it. But let me get to the more important issues, which is this. Dennis had knowledge. He had direct knowledge. He wasn't surmising. He was told by the architect of the fraud, this is the fraud. Under that standard, the CEO of a company could meet with the CEO of another company, and then he could agree to a fraud. He would go out and he would tell the COO of that company, here is the fraud I just agreed to. Go out and implement that fraud. And that president could then, or COO, could then see all the documents, all the agreements, work with all the people implementing the fraud, and he would not have direct knowledge. That is not what direct knowledge is. He saw it with his own eyes. Direct knowledge is seen with your own eyes. It doesn't mean you have to be in the room during the two-minute conversation that the fraud is agreed upon. You can learn about the fraud in all kinds of ways. Schumann was suing AstraZeneca. He was suing BMS. And he was making surmises based on his experience-based knowledge about what BMS might be doing, what AstraZeneca might be doing. Not Medicare. He saw the documents. He actually saw the documents. He saw documents, but he didn't know what AstraZeneca was doing with best price. He didn't know how AstraZeneca was setting best price. Dennis knew. He knew those purchase discounts were not being passed through. He knew. He spoke to the... He supervised Regina Dennis. She took over for him. She was doing what he did before. And he was her direct supervisor. And she told him, I am doing it the same way. I am not disclosing purchase discounts to customers. I am not disclosing them to the government. And I'm not even keeping track of them in the same way I'm keeping track of rebates. And he's actually introduced evidence of the fact, which again is non-public, that both AstraZeneca and Medgar were treating these purchase discounts as if they were rebates. Mr. Sterling... Which is something that's not public. Let me take you back to the district court's opinion. Because he says that at page nine of his opinion, Dennis cites a collection of allegations from the fourth amended complaint, purportedly demonstrating he is an original source with direct knowledge. Right. These allegations are insufficient for one of four reasons. And the first one he says is they are unchanged from the previous complaint. How are the allegations in the fourth amendment complaint different? That's just incorrect, your honor. Much more specificity about knowledge, where the knowledge came from, dates, precise aspects of the scheme were included in the third amendment. That's just simply not correct. Okay. Then he says, secondly, that the allegations elaborate on a fraudulent scheme proposed to Merck or another drug company, which does not demonstrate firsthand knowledge of a fraudulent scheme related to AstraZeneca. And I think that's a ridiculous comment. If you're told by the head of contracting, I just agreed to a fraud, here are the specifics of the fraud. I want to now extend that to Merck, prepare a PowerPoint. You know about the fraud. You have direct knowledge of the fraud. All right, and then his third reason is the allegations show that Dennis received his knowledge secondhand through reviewing documents or being told information. Why is that not the case here? Because he also received his knowledge from being an employee at Medco and actually implementing and being involved in the mechanics of how the fraud was implemented and why Medco intended to commit the fraud. Schumann did not do that because he did not work for AstraZeneca. He did not work for BMS. And by the way, nobody challenged Schumann as an original source to Medco, whom he also sued and recovered money from under a case that I handled. So nobody's ever said Schumann wasn't an original source as to Medco. They said he wasn't an original source as to AstraZeneca and BMS. And the court made very clear why that was. That is not the case here. Mr. Dennis is the prototypical original source. And if you don't find him to be an original source, there are hundreds of cases under seal right now to which the 2010 statute applies, which involved senior executives who've come forward with evidence of fraud. And if this is the standard in this circuit, those cases are going to be dismissed, and they may be meritorious. All right. Thank you very much. Thank you. And thank you very much to both of counsel for your helpful arguments here today. The panel will take the case under advisement. And I'll ask the clerk to adjourn the proceedings.